<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**CMT DEVELOPER LLC & DAVID KRAMER**,

Plaintiffs,

v.

**ACIER HOLDINGS LLC,** *et al*,

Defendants.

Civil Action No. 21-12517 (ZNQ) (LHG)

**OPINION**

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss Defendants'/Counterclaimants' First Counterclaim filed by Plaintiffs CMT Developer LLC ("CMT") and David Kramer ("Kramer") (collectively, the "Plaintiffs"). ("Motion to Dismiss", ECF No. 19.) Plaintiffs filed a Moving Brief in support of their Motion to Dismiss. ("Moving Br.", ECF No. 20.) Defendants/Counterclaimants Acier Holdings, LLC, ("Acier") Knight Construction, LLC ("Knight"), Dov Zabrowsky, Moshe Glatzer, and Jacob Glatzer (collectively, "Defendants" or "Counterclaimants") filed an Opposition to Plaintiffs' Motion to Dismiss ("Opp'n", ECF No. 23) to which Plaintiffs Replied ("Reply", ECF No. 30.) Also pending is Plaintiffs' Motion to Discharge Lis Pendens ("Motion to Discharge", ECF No. 35) which was Opposed by Defendants ("Lis Pendens Opp'n", ECF No. 38.)

The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

1

For the reasons set forth below, the Court will DENY Plaintiffs' Motion to Discharge Lis Pendens and DENY Plaintiffs' Motion to Dismiss Defendants' First Counterclaim.

I. **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs initiated this matter by filing their Complaint on June 14, 2021. ("Compl.", ECF No. 1.) They seek (a) a declaratory judgment that Defendants do not own any interest in Plaintiff CMT Developers LLC; (b) damages arising from Defendant Knight Construction LLC and Defendants' wanton misappropriation of funds slated exclusively for the construction of Plaintiffs' condominium project; and (c) injunctive relief prohibiting Defendants from continuing to falsely misrepresent to third parties that they have an ownership interest in CMT Developers LLC or any of its real estate development projects. (Compl. ¶ 1.)

According to Plaintiffs, in January 2016, CMT purchased the properties located at 901-931 East Jersey Street, Elizabeth, NJ (the "Property") with the intention of developing the Property into a 514-unit apartment complex with ground floor retail space and an appurtenant parking garage (the "Development Project"). (*Id.* ¶ 14.) The general contractor for the Development Project is Defendant Knight Construction LLC. (*Id.* ¶ 15.) The funds to construct the Development Project are deposited directly by CMT's lender into an account controlled by Knight (the "Development Funds") so that Knight could use those Development Funds to pay contractors, vendors and suppliers in connection with the Development Project. (*Id.* ¶ 16.) The lender would not agree to make the loans underlying the Development Funds to CMT without Kramer's personal guaranty, so Kramer provided one to secure the loans used to fund the Development Funds and thus the Development Project. (*Id.* ¶ 17.) Throughout the life of the Development Project, the Individual Defendants that were involved in the progression of the Development Project became distracted by other real estate projects and their efficiency on the Development Project waned

which caused serious delays and resulted various deadlines being missed to complete the Development Project. (*Id.* ¶¶18–20.) Plaintiffs also allege that Defendants "have been misappropriating CMT's Development Funds for their own enrichment as well as the enrichment of their Other Projects." (*Id.* ¶ 21.) "Further, Individual Defendants, through Knight, have failed to deliver certain documentation to CMT that is necessary for CMT's new lender, which is delaying—and will potentially preclude—CMT's ability to refinance its present loan, forcing it to incur interest at a punitive rate." (*Id.* ¶ 22.) Defendants have also misrepresented to federal banking institutions, prospective lenders, and prospective investors "that the Individual Defendants, either directly or through Acier, have an ownership interest in CMT and/or the Development Project." (*Id.* ¶ 23.) As a result, "CMT's business functions have been severely impacted, interrupted and injured" as every day of delay created by Defendants' misrepresentations costs CMT tens of thousands of dollars in additional interest payments to its lenders. (*Id.* ¶¶ 25–26.) The Complaint alleges four counts against Defendants: declaratory judgment, unjust enrichment, conversion, and false advertising trademark infringement and unfair competition.

On October 6, 2021, Defendants filed their Answer to the Complaint. ("Answer", ECF No. 16.) In their Answer, Defendants deny most of Plaintiffs' allegations, assert twelve affirmative defenses, and allege five counterclaims. (*See generally id.*) As part of their counterclaims, Defendants allege that "the joint venture between Acier and the Plaintiffs dates back to 2016, after the Property was purchased by Acier's affiliate CMT on January 12, 2016." (*Id.* ¶ 12.) "The Property was purchased by CMT to develop into an apartment complex known as Jersey Walk." (*Id.* ¶ 16.) Following CMT's purchase of the Property, Acier and Kramer agreed that the Property would be subject to a joint venture between Acier and Kramer and that both parties would

contribute their expertise in developing the Property into the Jersey Walk Development and that Kramer would not contribute any funds, but instead would only assist in obtaining financing. (*Id.*) "In recognition of the joint venture, on January 29, 2016, CMT's managing member . . . sold CMT to Kramer for $11 million to bring him into the joint venture. In consummating this transaction, Acier was 'supposed' to receive $4 million of the $11 million purchase price, but the entire purchase price was a paper transaction: Kramer did not actually pay any money to acquire CMT nor did Acier or CMT's owners receive any money from him. (*Id.* ¶ 17.) "Pursuant to this original joint venture agreement, Acier was to receive ninety percent of the profits and losses of the development, with Kramer receiving the remaining ten percent." (*Id.*) Following this transaction, and in reliance in their joint venture interest in the Property, Acier continued its lead role in the development and construction of the Property and the Development Project, mainly by managing its construction through its affiliate, Knight. (*Id.* ¶¶ 19–20.) Throughout the life of the Development Project, Acier has contributed money to the joint venture and has overseen the finances and construction of the project. (*Id.* ¶¶ 19–39.) Despite Acier's contributions to the Development Project, Kramer has claimed that the project is not a joint venture and attempts to cut Acier out of the project. (*Id.* ¶ 40.) As a result, Defendants request that a constructive trust be imposed on the property to preserve the status quo. (*Id.* ¶ 67.)

## II.     MOTION TO DISCHARGE LIS PENDENS

On November 17, 2021, Defendants filed a Notice of Lis Pendens concerning Block 7, Lot 312 on the tax map of the City of Elizabeth, more commonly known as 901-931 E. Jersey Street, Elizabeth, New Jersey 07201. ("Lis Pendens", ECF No. 22.) On February 10, 2022, Plaintiffs filed a Motion to Discharge the Lis Pendens. (ECF No. 35.) In its Motion to Discharge, Plaintiffs argue that Defendants cannot demonstrate that there is a probability that final judgment will be

entered in favor of Defendants sufficient to justify the filing or continuation of the lis pendens. (*Id.* at 1.) This is because "Defendants' declaratory judgment counterclaim does not concern an interest in real property,[1] the counterclaim is baseless and belied by documentary evidence," and the lis pendens was only filed strategically "to prevent Plaintiffs from accessing financing on the Property and cause significant hardship." (*Id.* at 7–8.)

Defendants filed their Opposition to Plaintiffs' Motion to Discharge on February 22, 2022. ("Discharge Opp'n", ECF No. 38.) In their Opposition, Defendants adopt the same position they take on the Motion to Dismiss; Plaintiffs completely misrepresent their first counterclaim as seeking an interest in CMT rather than Defendants' actual claim, which is an interest in the Development Project's property. (*Id.* at 2.) Second, the Discharge Motion should be denied because Defendants can show that "there is a probability that final judgment will be entered in favor of the [Defendants] sufficient to justify the filing or continuation of the notice of the Lis Pendens." (*Id.*) Finally, Plaintiffs' Motion should be denied because "the lis pendens serves an important purpose in this litigation. Specifically, it places third parties on constructive notice of this litigation and Defendants' Counterclaims, which seek a constructive trust over the . . . Development [Project] and the property on which it is built." (*Id.*)

"The primary purpose of [a] lis pendens is to preserve the property which is the subject matter of the lawsuit from actions of the property owner so that judicial relief can be granted, if the plaintiff prevails." *Manzo v. Shawmut Bank, N.A.*, 291 N.J. Super. 194, 200 (App. Div. 1996) (citation and quotations omitted). Under New Jersey law, a party may move to discharge a lis pendens for a plaintiff's failure to diligently prosecute its case, or for other good cause shown. N.J.S.A. 2A:15-10. When a motion to discharge a lis pendens is made, "the determination of the

---

[1] Similar to their Motion to Dismiss Defendants' Counterclaim, Plaintiffs argue that Defendants assert a membership interest in CMT LLC. (Motion to Discharge at 8.)

5

court will depend on 'whether there is a probability that [a] final judgment will be entered in favor of the plaintiff sufficient to justify the continuation'" of the lis pendens. *Fravega v. Security Savings and Loan Assoc.*, 192 N.J. Super. 213, 218 (Ch. Div. 1983) (citations omitted). New Jersey law specifically provides a party the right to file a motion to discharge a lis pendens under Section 2A:15-7(b), and places the burden on the filer of that lis pendens to show that "there is a probability that final judgment will be entered in favor of the [filer] sufficient to justify the filing or continuation of the notice of lis pendens." N.J.S.A. 2A:15-7(b).

Here, it is clear that Plaintiffs misconstrue Defendants' first counterclaim (which requests the imposition of a constructive trust) as only seeking an interest in Plaintiff CMT LLC, not the Property or the Development Project. Notably, Plaintiffs completely fail to address Defendants' Counterclaims' *ad damnum* clause, which specifically requests the imposition of "a constructive trust with respect to the Property and the Jersey Walk Development." (Answer, ¶ 69.) This alone, however, is not enough to uphold a notice of lis pendens. "A motion to discharge a *lis pendens* may be granted only if the complaint fails to recite unequivocally a cause of action entitling [Defendants] to the *lis pendens*." *Gabel v. Pines*, Civ. No. 88-1509, 1988 WL 68895, at *2 (D.N.J. June 15, 1988) (citing *Hilton Hotels Corp. v. Piper Co.,* 214 N.J. Super. 328, 333 (Ch.Div.1986)). Accordingly, the next inquiry for the Court to consider is whether Defendants' counterclaims "affect the title to real estate or a lien or encumbrance thereon," as required by N.J.S.A. § 2A:15-6.

New Jersey law dictates which causes of action may satisfy this requirement. Relevant here, Defendants' first counterclaim explicitly requests "the imposition of a constructive trust with respect to the Property and the Jersey Walk Development." (Answer ¶¶ 66–69.) In their Counterclaims, Defendants allege that a constructive trust with respect to the Property and the

Jersey Walk Development is warranted to (i) "maintain the status quo," and (ii) "remedy [Plaintiff] Kramer's maneuvers to unjustly enrich himself at Acier's expense by claiming the entire Jersey Walk Development as his own." (*Id.* ¶¶ 67–68.) New Jersey law is clear that a request for the imposition of a constructive trust upon real property justifies the filing of a lis pendens. *See Polk v. Schwartz*, 166 N.J. Super. 292, 298 (App. Div. 1979) ("There is no doubt that an action to impress a constructive trust on realty affects title to that property, so that a notice of lis pendens may be filed under a statute such as ours."); *Gabel*, 1988 WL 68895, at *2 (upholding lis pendens where complaint, taken as true, sought the imposition of a constructive trust upon real property); *O'Boyle v. Fairway Products, Inc.*, 169 N.J. Super. 165, 166 (App. Div. 1979) (upholding lis pendens where the complaint "clearly and unequivocally demanded judgment imposing a constructive trust on certain real property" and asserted that defendants took title to the realty in violation of a partnership).

Defendants' first counterclaim sets forth a cause of action entitling plaintiff to a lis pendens by virtue of their status as joint venturers of the Development Project (Answer ¶ 58) and further seeks imposition of a constructive trust (*id.* ¶¶ 67–69). As grounds for a constructive trust, Defendants allege that "Kramer has wrongfully attempted to deprive Acier of its joint venturer rights . . . by claiming to third parties (and this Court) that Acier has no interest in the Development [Project] and the Property" and to "remedy Kramer's maneuvers to unjustly enrich himself." (*Id.* ¶¶ 67–68.) "Imposition of a constructive trust on realty undoubtedly affects title to that property, thus permitting the filing of a lis pendens." *Gabel*, 1988 WL 68895, at *2 (citing *Polk*, 166 N.J. Super. at 298). Accordingly, Plaintiff's Motion to Discharge Lis Pendens will be DENIED. *See id.* (denying motion to discharge because filer of lis pendens set forth a cause of action entitling

her to a lis pendens by virtue of her status as co-owner and landlord of the property and also sought imposition of a constructive trust.).

### III. MOTION TO DISMISS

#### A. PARTIES' ARGUMENTS

In their Motion to Dismiss, Plaintiffs argue that Defendants' "first counterclaim seeking a declaration that Acier possesses an unspecified membership interest in CMT must be dismissed as it is squarely controverted by documentary evidence referenced to and incorporated into Defendants' Counterclaim." (Moving Br. at 5.) Specifically, Plaintiffs point to Acier's allegation that it possesses an interest in CMT based on the January 2018 meeting and argues that Acier's allegation is directly contradicted by CMT's Amended Operating Agreement ("AOA") which expressly states that CMT is owned by one sole member—Kramer. (*Id.* at 7.)

In their Opposition to the Motion to Dismiss, Defendants argue that Plaintiffs have completely misunderstood and misconstrued their first counterclaim. (Opp'n at 7.) In fact, Defendants do not claim any ownership interest in CMT at all.[2] (*Id.* at 8.) "Rather, Defendants expressly allege that a joint venture to develop the Property existed between Acier and Kramer after CMT purchased the Property but *prior to* Kramer's ownership of CMT." (*Id*. at 9) (emphasis in original). At the time the parties agreed to and formed the joint venture, CMT was still wholly-owned by a member of Acier. (*Id.*) "Upon the joint venture agreement, Acier and its principals agreed to sell CMT to Kramer via a paper transaction to cut Kramer into the agreed-upon joint venture by letting him be the sole member of the entity owning the Property." (*Id.*) Thus, Defendants' Counterclaims cogently allege that the no-cash sale of CMT to Kramer *was not* a sale

---

[2] Although ¶ 51 of Defendants' Answer asserts that "Acier is a joint venture partner with Kramer *in* CMT", the specificity and consistency, including the explicit language in their *ad damnum* clause in Defendants' pleadings point to an alleged joint venture interest in the Development Project rather than CMT itself. (Answer ¶ 51) (emphasis added).

8

of Acier's co-venturer interest in the Jersey Walk Development or the Property, but was instead an act performed in reliance upon, and in furtherance of, the very joint venture agreement that Acier seeks to vindicate in its first counterclaim. (*Id.*) (emphasis in original). As a result, the Development Project joint venture must subsume CMT, and cannot be equivalent to it. (*Id.*) "Defendants' Counterclaims clearly make out that CMT was only an entity to help carry out the Development [Project] (along with Acier, Knight, Jersey Walk Garage Urban Renewal LLC), not the Development [Project] itself, as Plaintiffs' Motion disingenuously insinuates." *Id.*

### B.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred).

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a motion to dismiss a complaint." *RBC Bank (USA) v. Petrozzini*, Civ. No. 12-155, 2012 WL 1965370, at *2 (D.N.J. May 31, 2012). In view of this standard, when considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a [defendant] must plead to state a [counter]claim.'" *Id*. (quoting

9

*Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Second, the court must accept as true all of the allegations in the Defendants' counterclaim and all reasonable inferences that can be drawn therefrom, and construe the counterclaim in the light most favorable to the Defendants.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  However, the court should disregard any conclusory allegations proffered in the counterclaim.  *Id*.  Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts are sufficient to show that [defendants have] a 'plausible claim for relief.'"  *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).  This requires more than a mere allegation of an entitlement to relief.  *Id*.  "A [counterclaim] has to 'show' such an entitlement with its facts."  *Id*.  A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged.  *Id*. at 210 (quoting *Iqbal*, 556 U.S. at 678).  Facts suggesting the "mere possibility of misconduct" fail to show that the Defendants are entitled to relief.  *Id*. at 211 (quoting Iqbal, 556 U.S. at 679).  When considering a Rule 12(b)(6) motion, a court's role is limited to determining whether Defendants are entitled to offer evidence in support of the alleged claims.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The Court does not consider whether Defendants will ultimately prevail.  *See id*.

    **C.**    **ANALYSIS**

On October 6, 2021, Defendants filed their Answer.  (ECF No. 16.)  It included five counterclaims, the first of which is contested here.  The first counterclaim seeks a declaratory judgment that:

> (i) Acier and Kramer are co-venturers with respect to the Jersey Walk Development pursuant to both the parties' agreement and course of conduct;
> (ii) Acier therefore has an ownership interest in the Property/Jersey Walk Development; and

> (iii) Acier and Kramer shall share in the profits and losses of the Property/Jersey Walk Development consistent with their January 11, 2018 agreement.

(Answer ¶ 66.)  In seeking a declaratory judgment, Defendants allege that "at the very beginning of the . . . Development project, Acier and Kramer ha[d] agreed that the Development [Project] was to be a joint venture between the parties."  (*Id.* ¶ 58.)  Over time, the parties amended their joint venture agreement to update the share of the profits and losses that they were respectively entitled to as part of the joint venture.[3]  (*Id.* ¶ 59.)  However, on January 11, 2018, in light of Kramer's request for a larger role in the venture, the parties modified their agreement such that they would equally split the profits and losses of the Development Project between Acier and Kramer.  (*Id.*)  In reliance on this agreement, Acier has, at all times, conducted itself as a joint venture partner in the Development project by—among other things—actively procuring financing on behalf of the project, overseen and directed the construction of the project, and contributed its own capital to the project.  (*Id.* ¶ 60.)  "In fact, to date, Acier has contributed over $8.8 million to the Development [Project], approximately two million more than Kramer has contributed."  (*Id.*)  Despite these facts, however, Kramer has recently reneged on his arrangement with Acier and has represented to third-parties that Acier does not have a stake in the Development Project.  (*Id.* ¶ 62.)  To avoid further damage, a constructive trust should be imposed upon the Property to preserve the status quo.  (*Id.* ¶ 67.)

It is clear to the Court that Plaintiffs misread Defendants' counterclaim.  Although Plaintiffs believe that Defendants claim an interest in CMT LLC, Defendants have clarified—and the Court also interprets—that Defendants claim to be joint venturers in the Development Project and therefore claim an interest in the *Development Project* and the *property* on which it is being

---

[3] "The parties originally agreed that the joint venture between the parties would result in Acier receiving 90% of the profits (or losses) of the Development [Project] with Kramer receiving the remaining 10%.  (*Id.* ¶ 59.)

11

built. The grounds of Plaintiffs' Motion to Dismiss Defendants' first counterclaim are therefore without merit.

Moreover, even if Plaintiffs properly construed Defendants' first counterclaim and moved to dismiss it for failure to plead a joint venture in the Development Project, it would still not change the Court's holding as Defendants have plausibly pled the existence of a joint venture.

New Jersey defines a joint venture as:

> '[a] special combination of two or more persons where in some specific venture, a profit is jointly sought without any actual partnership or corporate designation.' *Wittner v. Metzger*, 72 N.J. Super. 438, 444 (App. Div.) (quoting *Kurth v. Maier*, 133 N.J. Eq. 388, 391 (E. & A. 1943)). It is 'an undertaking usually in a single instance to engage in a transaction of profit where the parties agree to share profits and losses.' *Id.* For a joint venture to have been formed, the parties must have agreed upon the essential terms. A joint venture agreement does not exist if the terms are 'so vague, indefinite and uncertain as to make it illusory and therefore unenforceable.' *Paley v. Barton Sav. & Loan Ass'n*, 82 N.J. Super. 75, 82 (App. Div.), certif. denied, 41 N.J. 602 (1964). In determining whether a joint venture was formed, the court's primary consideration is the intention of the parties. *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992).

*Burnham v. WMC Mortg. Corp.*, Civ. No. 07-6101, 2010 WL 2560657, at *7 (D.N.J. June 21, 2010) (quoting *Ginsberg v. Bistricer*, Civ. No. A-5751-03T5, 2007 WL 987169, at *11 (App. Div. Apr. 4, 2007)). To sufficiently plead the existence of a joint venture generally requires some or all of the following elements:

> (A) A contribution by the parties of money, property, effort, knowledge, skill or other asset to a common undertaking;
>
> (B) A joint property interest in the subject matter of the venture;
>
> (C) A right of mutual control or management of the enterprise;
>
> (D) Expectation of profit, or the presence of adventure, as it is sometimes called;

>> (E) A right to participate in the profits;
>
> (F) Most usually, limitation of the objective to a single undertaking or ad hoc enterprise.

*Id.* at *7. Defendants have pled that they, along with Plaintiffs, have contributed money and effort to complete the Development Project and had mutual control over the management of the Development Project. Notably, Defendants allege they "contributed over $8.8 million to the Development [Project], approximately two million more than Kramer has contributed" and actively procured financing on behalf of the project, oversaw, and directed the construction of the project." (Answer ¶ 60.) Defendants also allege they have a joint property interest in the Development Project because Acier's affiliate, CMT, had acquired the property with the intent to develop it into an apartment complex. (*Id.* ¶ 12.) Defendants also sufficiently plead that they have an expectation of profit and a right to participate in profits by agreeing "that the joint venture between the parties would result in Acier receiving ninety-percent (90%) of the profits (or losses) of the Development [Project] (with Kramer receiving the remaining ten-percent (10%))." (*Id.* ¶ 59.)

Insofar as Defendants sufficiently plead the existence of a joint venture, Plaintiffs' Motion to Dismiss is properly denied on that basis as well. *See Summit Transp. Corp. v. Hess Energy Mktg., LLC,* Civ. No. 14-5119, 2015 WL 858153, at *3–5 (finding that the defendants had adequately pled the existence of an oral joint venture agreement absent any specific financial terms because the defendants "gradually wrested control" from the plaintiff and played a pivotal role in maintaining "longstanding relationships with additional customers.").

## IV.   CONCLUSION

For the reasons stated above, the Court will DENY Plaintiffs' Motion to Discharge Lis Pendens and DENY Plaintiffs' Motion to Dismiss Defendants' First Counterclaim. An appropriate Order will follow.


Date: **February 28, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
